IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL CRAWFORD<br><br>Plaintiff,<br><br>vs.<br><br>BEST FRIENDS DAYCARE, LLC<br>LORI BERRUN, INDIVIDUAL<br>TIMOTHY NORRIS, INDIVIDUAL<br>KRISTIN LLOYD, INDIVIDUAL<br><br>Defendants. | Case No. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Crystal Crawford (hereinafter, "Plaintiff") moves the Court for entry of judgment in her favor against the named Defendants and in support of such Complaint avers as follows:

**PARTIES, JURISDICTION AND VENUE**

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to federal law specifically, the Americans with Disabilities Act of 2008 ("ADA"). Moreover, this Honorable Court has jurisdiction over Plaintiff's state law claims to the extent that he pleads them pursuant to 28 U.S.C. §1367.

1

2. Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

3. Plaintiff brings this action against her former employer, Best Friends Daycare, LLC, ("Defendant" or "Best Friends"). Best Friends is a Pennsylvania company located at 2150 Linglestown Rd., Harrisburg, Pennsylvania 17110.

4. Defendant Lori Berrun ("Berrun") is an adult female and upon information and belief, resides within in the Commonwealth of Pennsylvania. Berrun is employed by Best Friends as a supervisor. Berrun is in the supervisory line of succession relative to the Plaintiff and participates in the decisions to enforce discipline and/or to terminate employees including the Plaintiff. Berrun aided and abetted in the decision to terminate the Plaintiff.

5. Defendant Timothy Norris ("Norris") is an adult male and upon information and belief, resides within in the Commonwealth of Pennsylvania. Norris is employed by Best Friends as an owner and as a supervisor. Norris is in the supervisory line of succession relative to the Plaintiff and participates in the decisions to enforce discipline and/or to terminate employees including the Plaintiff. Berrun aided and abetted in the decision to terminate the Plaintiff.

6. Defendant Kristin Lloyd ("Lloyd") is an adult female and upon information and belief, resides within in the Commonwealth of Pennsylvania. Norris is employed

by Best Friends as an owner and supervisor. Norris is in the supervisory line of succession relative to the Plaintiff and participates in the decisions to enforce discipline and/or to terminate employees including the Plaintiff. Berrun aided and abetted in the decision to terminate the Plaintiff.

7. Plaintiff is an adult female who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania and was employed by Best Friends.

## UNDERLYING FACTS

8. Plaintiff is a disabled female who worked for Defendants as a teacher from May 15, 2022, until the date of her termination on July 15, 2022.

9. Plaintiff has Lupus. Lupus is an autoimmune condition that causes inflammation throughout the body. This inflammation can cause problems in organs such as the kidneys as well as conditions in the central nervous system. Major life activities of the Plaintiff that were substantially limited included: thinking, concentrating, sleeping, eating, chronic pain, mobility and working.

10. The Defendants were on notice of the Plaintiff's disabilities due to the Plaintiff's repeated medical leave and hospitalization. Further, the Plaintiff informed her supervisor of the same and had missed at least 5 days during her tenure due to flare ups.

11. The Plaintiff worked at Best Friends four (4) years prior to her most recent employment and, even at that time, Defendant was aware of the Plaintiff's

autoimmune disorder. In fact, Defendant again had notice of the Plaintiff's condition because she was in and out of the hospital during the first few weeks after restarting her employment with Defendant.

12. In fact, Berrun, a director for Defendant, told the Plaintiff to bring a doctor's note back to work after one of Crawford's visits to the hospital, See **Exhibit A**. The Plaintiff would send pictures and text messages to a group chat utilized by Defendant's employees to communicate throughout the workday as was a common practice as well as allowing Plaintiff to keep supervisors and teachers informed of her health issues and, hospitalization, see **Exhibit A and B**.

13. The Defendant had sufficient notice of Plaintiff's need for medical leave accommodation. Nonetheless, the Defendant failed to provide reasonable workplace accommodations for Plaintiff, choosing instead to simply terminate Plaintiff after she returned from the last hospitalization.

14. Defendant's owner, Norris, referred to Plaintiff as "drama," per one of his employees who Facebook voice messaged the Plaintiff when he announced to other employees, "[d]on't worry, I got rid of the drama." Norris' statement supports Plaintiff's position that her termination was motivated, not by performance, attendance, or the later-asserted violation of cell phone policy, but by discriminatory, retaliatory animus directed at Plaintiff due to her health.

15. Further, on or about July 15, 2022, Plaintiff reported child abuse at the daycare when a teacher told Plaintiff's autistic son that if he was hungry, he could eat the lunch he threw away in the trash can.

16. It is worth mentioning that, as a caregiver to children, Plaintiff was a mandatory reporter to Child Protective Services (CPS). During Plaintiff's employment with Defendant, parents reached out to Plaintiff to tell her that one of Plaintiff's coworkers (Sherry LNU) the coworker who told Plaintiff's child to eat his lunch out of the trashcan, was "nasty" to their children.

17. Plaintiff, as a mandatory reporter, reported this information to Norris and CPS as was her duty. Plaintiff reported this information to CPS via a telephone call and CPS investigated. Considering this in light of Plaintiff's disability, and her son's autism and learning challenges, and fact that Plaintiff also informed Norris that Sherry LNU told her son to eat his lunch out of the trashcan, it is more likely than not that Defendant terminated Plaintiff due to her reports regarding the abuse regarding her disabled son and due to her need for medical leave because of her lupus in order to "get rid of the drama" and not for any legitimate, lawful purpose.

18. The Plaintiff was fired on July 15, 2022, for poor work performance, attendance and an alleged violation of a cell phone policy. Plaintiff's termination came only after she reported another employee's statement to her son to eat his lunch out of the trashcan in addition to the fact that she had been dealing with

hospitalization due to her disabilities. The statement regarding her son caused Plaintiff so much distress that, upon learning about the statement, Plaintiff reached out to Norris who, in turn, requested Plaintiff call him via Facebook messenger and the calls were subsequently made at his request through Facebook Messenger, See **Exhibit C**. After reporting the alleged statement made to her child, Norris promptly terminated Plaintiff the very same day as well as inviting Plaintiff to contact the Department of Human Services (DHS) the "…licensing officer…" to report his childcare business, See **Exhibit D**.

19. Norris, as well as all staff members working for Defendant, have a duty to report suspected mistreatment to ChildLine. See 55 Pa. Code § 3270.19. Although it is unknown whether or not Defendant reported the information provided by Plaintiff, it is worth mentioning that failing to do so may rise to the level of dereliction of Defendant's duty to protect children in its care.

20. In fact, "within 48 hours, a written report regarding the suspected child abuse shall be submitted by the operator or designated staff person to the CPS unit which has responsibility for investigating the report." *Id*.

21. What is known is that as soon as Plaintiff alerted Defendant that one of its employees might be mistreating children at the facility, Defendant's first course of action was to almost immediately to terminate Plaintiff.

22. Further, as mentioned, Defendant later adds another reason for termination in Defendant's EEOC Position Statement (**Exhibit E**) alleging that Plaintiff was also in violation of Defendant's cell phone policy. However, no evidence has been provided to support these unsubstantiated allegations. In fact, Plaintiff's termination notice, see **Exhibit E**, does not mention anything about Plaintiff allegedly violating Defendant's cell phone policy. However, in the letter it does make threats of "…civil liability" and "lawsuits" …for "…defamatory statements." Case law confirms that Plaintiffs such as Plaintiff may establish the causal connection required to satisfy the standard of proof by showing that the employer gave inconsistent reasons for terminating the employee, *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 274, 2000 U.S. App. LEXIS 3243, *1, 82 Fair Empl. Prac. Cas. (BNA) 464, 78 Empl. Prac. Dec. (CCH) P40,04.

23. Plaintiff therefore avers she has been discriminated against based on her disability (Lupus) when Defendants fired her for attendance issues knowing she had Lupus and had been in the hospital and provided doctor's notes. Further, Defendants retaliated against the Plaintiff by terminating her after she had availed herself of protected leave.

24. Furthermore, the Defendant fired the Plaintiff due to her association with her son, who has a disability: autism.

25. Subsequently, Plaintiff filed a Dually Filed Charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on September 5, 2023, docketed as 530-2023-01690 which was dismissed by the EEOC on October 18, 2023 (**see Exhibit F**).

26. The Defendants' actions or inaction are of a continuing nature thus they fall under the doctrine of a continuing violation theory.

27. Best Friends is responsible/liable for the actions of its agents under a theory of *Respondeat Superior*.

## COUNT 1
## PHRA DISABILITY DISCRIMINATION
## ALL DEFENDANTS

28. Plaintiff incorporates herein the previous averments as if fully set forth.

29. The Plaintiff is a qualified individual with a disability under the PHRA due to her Lupus which substantially limit the major life activities of sleeping, eating, mobility, working, communicating, chronic pain and concentrating and Defendants' notice of the same.

30. The Plaintiff had a record of disability and/or was regarded as disabled by the Defendants.

31. The PHRA prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for accommodation in the workplace.

32. Plaintiff requested accommodation pursuant to state and federal law, i.e., medical leave, intermittent due to treatment for Lupus.

33. Defendant failed to accommodate Plaintiff's disability and instead, it disciplined and terminated her when she sought leave related to her disability.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

**COUNT 2**
**PHRA DISABILITY-HOSTILE WORK ENVIRONMENT**
**ALL DEFENDANTS**

34. Plaintiff incorporates herein the previous averments as if fully set forth.

35. The Plaintiff is a qualified individual with a disability under the PHRA due to her Lupus which substantially limit the major life activities of sleeping, eating, mobility, working, communicating, chronic pain and concentrating and Defendants' notice of the same.

36. The Plaintiff was subject to unwelcome harassment after she reported workplace harassment on or about July 15, 2022, as more fully noted above.

37. Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment as more fully noted above.

38. Defendant knew, or reasonably should have known of the harassment when the Plaintiff reported the same to her owner and CEO (Norris) on July 15, 2022, and they failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining her, and berating her due to her condition and then firing her as more fully noted within her Complaint and exhibits herein.

39. The fact that the Plaintiff's supervisor was a perpetrator of the harassment entitles the Plaintiff to strict liability for her claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 3
## PHRA DISABILITY RETALIATION
## ALL DEFENDANTS

40. Plaintiff incorporates herein the previous averments as if fully set forth.

41. The PHRA prohibits retaliation in the workplace against employees who have opposed practices made unlawful under the law.

42. The Plaintiff's reports of harassment in the workplace constituted "protected activity" pursuant to state and federal law.

43. Defendant retaliated against the Plaintiff on account of her protected activity when it fired her after she sought accommodation and opposed harassment and bullying by the CEO, Norris, as more fully noted above and within her Complaint and Exhibits herein.

44. Furthermore, Plaintiff avers that the Defendants' purported basis to fire her (e.g., *inter alia*, absences, cell phone violation) is false and erroneous and a pretext for underlying invidious reasons.

45. As a result, the Plaintiff avers that the Defendants retaliated against her on account of her protected activity by imposing discipline and discharging her without justification.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 4
## ADA DISABILITY DISCRIMINATION
## CORPORATE DEFENDANT ONLY

46. Plaintiff incorporates herein the previous averments as if fully set forth.

47. The Plaintiff is a qualified individual with a disability under the PHRA due to her Lupus which substantially limit the major life activities of sleeping, eating, mobility, working, communicating, chronic pain and concentrating and Defendants' notice of the same.

48. The Plaintiff had a record of disability and/or was regarded as disabled by the Defendants.

49. The ADA prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for accommodation in the workplace.

50. Plaintiff requested accommodation pursuant to state and federal law, i.e., medical leave, intermittent due to treatment for Lupus.

51. Defendant failed to accommodate Plaintiff's disability and instead, it disciplined and fired her when she sought leave for medical reasons related to her disability.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and punitive relief as well as all reasonable attorney's fees and costs of litigation.

## COUNT 5
## ADA DISABILITY-HOSTILE WORK ENVIRONMENT
## CORPORATE DEFENDANT ONLY

52. Plaintiff incorporates herein the previous averments as if fully set forth.

53. The Plaintiff is a qualified individual with a disability under the PHRA due to her Lupus which substantially limit the major life activities of sleeping, eating, mobility, working, communicating, chronic pain and concentrating and Defendants' notice of the same.

54. The Plaintiff was subject to unwelcome harassment after she reported workplace harassment on or about July 15, 2022, as more fully noted above.

55. Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment as more fully noted above.

56. Defendant knew, or reasonably should have known of the harassment when the Plaintiff reported the same to her owner and CEO (Norris) on July 15, 2022, and they failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining her, and berating her due to her condition and then firing her as more fully noted within her Complaint and exhibits herein.

57. The fact that the Plaintiff's supervisor was a perpetrator of the harassment entitles the Plaintiff to strict liability for her claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

**COUNT 6**
**ADA DISABILITY RETALIATION**
**CORPORATE DEFENDANT ONLY**

58. Plaintiff incorporates herein the previous averments as if fully set forth.

59. The ADA prohibits retaliation in the workplace against employees who have opposed practices made unlawful under the law.

60. The Plaintiff's reports of harassment in the workplace constituted "protected activity" pursuant to state and federal law.

61. Defendant retaliated against the Plaintiff on account of her protected activity when it fired her after she sought accommodation and opposed harassment and bullying by the CEO, Norris, as more fully noted above and within her Complaint and Exhibits herein.

62. Furthermore, Plaintiff avers that the Defendants' purported basis to fire her (e.g., inter alia, absences, cell phone violation) is false and erroneous and a pretext for underlying invidious reasons.

63. As a result, the Plaintiff avers that the Defendants retaliated against her on account of her protected activity by imposing discipline and discharging her without justification.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 7
## WRONGFUL DISCHARGE – REPORTS OF CHILD ABUSE/NEGLECT
## CORPORATE DEFENDANT

64. Plaintiff incorporates herein the previous averments as if fully set forth.

65. It is a public policy of the Commonwealth of Pennsylvania in the protection of public health, safety, and welfare of disabled children to ensure that they are kept safe and free from harm.

66. Plaintiff was unlawfully discharged by the Defendants because she reported neglect and abuse both internally and to Child Protective Service as mandated under 55 Pa. Code § 3270.19. as well as the Superior Court noted and held under *Krolczyk v. Goddard Systems, Inc.*, ___ A.3d ___, 2017 WL 2255554 (Pa. Super. May 23, 2017) and further, under the Pennsylvania Constitution.

67. "[A] discharge may violate a 'clear mandate of public policy' if it results from conduct on the part of the employee that is required by law or from the employee's refusal to engage in conduct prohibited by law. 'The public policy exception has been most frequently applied under Pennsylvania law when the discharge is a result of the employee's compliance with, or refusal to violate the law.'" *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1344 (3d Cir. 1990).

68. Defendants' discharge of the Plaintiff for her reports as required under the law offends clear mandates of public policy in the Commonwealth of Pennsylvania and supports a tort claim for wrongful discharge. *Herskowitz v. Cty. of Lebanon*, No. 1:13-CV-00431, 2013 WL 5719250, (M.D. Pa. Oct. 21, 2013).

69. Furthermore, such reports and subsequent termination is a public-policy exception to the at-will doctrine as a common law cause of action for which relief may be granted.

70. The typical case involving wrongful discharge in violation of public policy is one where the "employee's termination is retaliatory and not grounded on a legitimate reason." *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006).

71. As a result of Plaintiff's termination, she has suffered emotional harm, embarrassment, humiliation, mental anguish, and loss of self-esteem, as well as economic loss and damage to her reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court grant relief on his Causes of Action as specified below.

72. The Plaintiff prays that the Court award monetary relief as follows:

73. On her Causes of Action, order the Defendants to pay equitable monetary relief and compensatory damages including pain, suffering and humiliation under the ADA and the PHRA as well as punitive relief to the Plaintiff as are asserted under the ADA, where and as applicable, in an amount to be proven at trial.

74. The Plaintiff prays that the Court award her costs, expenses, and attorneys' fees, payable by Defendants, where and as applicable, by determining that the Plaintiff is a prevailing party on his Causes of Action and thereupon awarding the Plaintiff his reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

75. Further, the Plaintiff prays that the Court award monetary relief as follows:

76. On her Cause of Action for Wrongful Discharge ordering the Corporate Defendant to pay equitable monetary relief and compensatory damages for pain, suffering and humiliation as well as punitive relief to the Plaintiff as are asserted under her claim, where and as applicable.

77. The Plaintiff prays that the Court Order the Defendants to pay pre- and post-judgment interest on all monetary amounts awarded, as provided by law.

78. The Plaintiff prays that the Court retains jurisdiction of this case for a sufficient period to assure that the Defendants have fully complied with the remedies to the greatest extent practicable.

79. The Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands trial by jury on all counts so triable.

DATED this, the 9th day of January 2024.

*By: /s/ Jeremy A. Donham, Esquire*
Jeremy Donham, (206980)
**DONHAM LAW**
714 Venture Drive, Ste. 144
Morgantown, West Virginia 26508
(717) 881.7855 (phone)
J.Donham@Donhamlaw.com

Charles J. Hobbs (209321)
**THE HOBBS LAW FIRM**
256 E. Market Street
York, PA 17403
(717) 793.2398 (Phone)
Email: chobbs@thehobbslawfirm.com